IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT HARMON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:06CV01674 SWW |
| | * | |
| DEPARTMENT OF VETERANS AFFAIRS, | * | |
| JAMES R. NICHOLSON, SECRETARY OF | * | |
| VETERAN AFFAIRS, | * | |
| | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Before the Court is defendants' motion to dismiss or in the alternative for summary judgment to which plaintiff responded and defendants replied. Having carefully considered the motion, response, reply, briefs, statements of facts, exhibits, and affidavits, the Court finds the motion for summary judgment should be granted.

**Background**

Plaintiff Robert Harmon ("Harmon") was diagnosed with HIV/AIDS in December 1996. At the time, he was working as a licensed practical nurse at a Veterans Administration ("VA") facility in Louisiana. He says he requested and received accommodations based on his condition, including being assigned as a clerk in the cancer registry. In December 2003, Harmon transferred to a VA hospital in Little Rock, Arkansas, where he worked as a cancer registry abstractor. Harmon was employed by the VA until December 3, 2004.

Harmon states he filed an EEOC complaint in June 2004 because he was dissatisfied with the interaction he had with his then supervisor, Maureen Coffey. Compl. at ¶ 10. In August

2004, his supervisor placed Harmon on a 30-day assistance plan in order to improve his performance. Harmon did not agree with the proposed action, *see* Def's. Br., Ex. 6, and says he filed another EEOC complaint related to the performance programs. Compl. at ¶ 10.

On September 30, 2004, Harmon attended a cancer registry seminar at a hotel in Little Rock. According to the allegations of his complaint, while he was at the seminar, an employee from the University of Arkansas for Medical Sciences ("UAMS") told him that Coffey, had been complaining to Linda Urekman[1], the UAMS employee's supervisor, about Harmon's work output. Harmon confronted Urekman at the seminar about the comment, allegedly speaking to her in a rude manner, putting his hand in her face, and following her to the restroom. After learning about the incident, the VA sent Harmon a letter on October 26, 2004, proposing to remove him from his employment for engaging in inappropriate and disrespectful conduct. Harmon responded to the notice of proposed removal, and on November 22, 2004, he received notice that he would be terminated effective December 3, 2004.

Harmon filed a complaint with the EEOC, alleging discrimination on the basis of sex, disability, and retaliation for prior EEOC activities. The VA's Office of Resolution Management ("ORM") investigated the matter; an EEOC investigator interviewed witnesses in

---

[1] In his brief, plaintiff spells Urekman's name as "Erkman." *See* docket entry 15 at 5.

April 2005, and Harmon submitted an affidavit in May 2005.[2]  After exhausting his administrative remedies, plaintiff filed a complaint in federal court on December 13, 2006.

Harmon claims defendants engaged in sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, and disability discrimination in violation of the Rehabilitation Act of 1973 as amended, 29 U.S.C. 706, 791 *et seq.* and the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

Defendants move for dismissal for failure to state a claim or, in the alternative, for summary judgment under Fed.R.Civ.P. 56.  Because defendants present matters outside the pleadings in support of their motion, and the Court relies upon those matters, the Court will consider defendants' motion for summary judgment.[3]

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v.*

---

[2]According to Harmon, with the consent of the  judge involved in that complaint and the VA, he withdrew his complaint  *See* Pl's. Br. in Resp., docket entry 14 at 2.  According to the VA, upon completion of a subsequent investigation, an administrative law judge remanded the complaint to the VA for a final decision based on the VA's investigative record.  On November 6, 2006, the VA issued a Final Agency Decision, finding that management did not intentionally discriminate against Harmon.  *See*  Def's. Br. in Supp., docket entry 10 at 1.  Defendants do not allege Harmon failed to exhaust his administrative remedies as to his claims of discrimination based on sex, disability, and retaliation.  They do assert Harmon did not raise a sexual orientation claim at the administrative level.  *See* Defs.' Br. in Supp. Resp. Mot. Cont. at pp-3-4.

[3]Also before the Court is plaintiff's motion to stay a ruling on defendants' motion until more discovery is conducted.  For the reasons stated in the opinion, the Court denies the motion [docket entry 24].

*Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Arnold v. Nursing and Rehab. Ctr. At Good Shepherd, LLC,* 471 F.3d 843, 845-6 (8th Cir. 2006)(internal citation omitted).

### Discussion

Harmon alleges claims of gender and disability discrimination as well as retaliation.

**1. Gender Discrimination**

Harmon asserts that Maureen Coffey, his supervisor prior to August 2004, and Patty Coke, his supervisor after August 2004, are prejudiced against homosexual men and do not approve of his lifestyle. *See* Defs.' Br. in Supp., Ex. 1 (Harmon Aff.) at ¶¶ 57-58. Although gender is a protected class, Title VII does not prohibit employment discrimination on the basis of

sexual orientation. *See Williamson v. A.G. Edwards and Sons, Inc.,* 876 F.2d 69, 70 (8th Cir.1989); *Medina v. Income Support Div., New Mexico,* 413 F.3d 1131, 1135 (10th Cir.2005); *Schroder v. Hamilton Sch. Dist.,* 282 F.3d 946, 951 (7th Cir. 2002); *Bibby v. Philadelphia Coca-Cola Bottling Co.,* 260 F.3d 257, 261(3rd Cir. 2001); *Simonton v. Runyon,* 232 F.3d 33 (2nd Cir. 2000).

Harmon argues that Executive Order 13,087, which addresses equal employment opportunity in the federal government, gives him a cause of action for discrimination based on sexual orientation. Exec. Order No. 13,087 ( May 28, 1998), which is the amended version of Exec. Order No. 11,478 (August 8, 1969), provides that it is the policy of the United States Government to prohibit discrimination in employment because of sexual orientation. On May 2, 2002, Section 11 was added to Exec. Order 11,478. It provides: "This Executive Order does not confer any right or benefit enforceable in law or equity against the United States or its representatives." Citing *Independent Meat Packers Association v. Butz,* 526 F.2d 228, 234-35 (8th Cir.1975), the court in *Centola v. Potter,* 183 F. Supp.2d 403, 413-414 (D.Mass. 2002), found that Executive Order Nos. 13,087 and 11,478 do not "expand the reach of Title VII to protect against discrimination on the basis of sexual orientation" and "do not create a judicially enforceable private right of action."

The Court finds, as a matter of law, that Harmon is not entitled to relief on his claim of discrimination on the basis of sexual orientation.[4]

**2. Disability Discrimination**

---

[4]Harmon argues that further discovery would "help support the claims already made." *See* Pl's.Mot. for Continuance at ¶ 4. Because the Court finds he fails to state a claim for relief as to his sexual orientation claim, there is no basis on which to grant the motion for continuance to explore Harmon's allegation of sexual orientation discrimination.

Harmon alleges he "is an individual who has HIV/Aids, is physically impaired and limited in one of more of his major life activities, thus bringing him within the ambit of the Rehabilitation Act and the ADA." Compl., ¶ 19. He claims defendants violated the ADA and Rehabilitation Act by failing to insure that he was properly trained for his job. *Id.* at ¶ 9.

Relief under the ADA is not available to federal employees. *See* 42 U.S.C. § 12111(5)(B)(i)(excluding from "employer" as used in the ADA the United States or a corporation wholly owned by the government of the United States). Therefore, the Court assesses Harmon's claim of disability discrimination under the Rehabilitation Act. Cases interpreting the ADA and the Rehabilitation Act are interchangeable because the same basic standards and definitions are used under the ADA and the Rehabilitation Act. *See Allison v. Dep't. of Corrections,* 94 F.3d 494, 497 (8th Cir. 1996).

The Rehabilitation Act prohibits the federal government from discriminating against the disabled or from failing to reasonably accommodate disabled employees. 29 U.S.C. §§ 791, 794; 22 C.F.R. § 144.140. To survive a motion for summary judgment under the Rehabilitation Act, the plaintiff must show that he is: 1) an individual with a disability; 2) otherwise qualified; 3) employed by a federal agency; and 4) adversely treated solely because of his disability. *Demming v. Housing and Redevelopment Auth. of Duluth, Minn.,* 66 F.3d 950, 954 (8th Cir. 1995). If he succeeds in establishing a prima facie case of disparate treatment, then the employer must articulate a legitimate, nondiscriminatory reason for the action. *Spades v. City of Walnut Ridge,* 186 F.3d 897, 899 (8th Cir. 1999). If the employer articulates such a reason, the burden shifts back to the employee to show that the proffered reason is pretextual and that the plaintiff suffered the adverse employment action *solely* because of his disability. *Id. See also Norcross*

*v. Sneed,* 755 F.2d 113, 116-17 (8th Cir. 1985) (a Rehabilitation Act claimant must show that his disability was the *sole* reason for the decision).  Defendants argue that Harmon cannot show that he is "disabled" and that he also fails to demonstrate that the VA's alleged failure to train him was based on his disability.

In *Bragdon v. Abbott,* 524 U.S. 624, 644 (1998), the Supreme Court held that HIV disease is an impairment under the ADA.[5]  "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195 (2002).  "Claimants also need to demonstrate that the impairment limits a major life activity." *Id.*  The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  "[T]he ADA requires those 'claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial.'  That the Act defines 'disability' 'with respect to an individual,' 42 U.S.C. § 12102(2), makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner." *Toyota Motor Mfg.,* 534 U.S. at 198 (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567 (1999)).

Harmon states that because of his condition, he has "to be careful about exposing [him]self to infections or exposing someone else" and that he has "to be careful not to stress [him]self physically or emotionally because of the effect on [his] immune system.  Def's. Br. in

---

[5]*Bragdon* also held that HIV substantially limits the major life activity of reproduction.  524 U.S. at 647.  Plaintiff does not assert his HIV-status substantially impairs his major life activity of reproduction.  *See Blanks v. Southwestern Bell Communications, Inc.,* 310 F.3d 398, 401 (5th Cir. 2002).

7

Supp. of Mot., Ex.1 (Harmon Aff.) ¶ 11.  As to the specific life activity affected, Harmon states his "entire life is affected. [He] must take care not to damage [his] immune system," he "must go to the doctor regularly," and be careful "of too much physical exertion." *Id.* at ¶ 14.  He describes his physical symptoms and/or characteristics of his impairment as "neuropathy, upset stomach from all medications, gastrointestinal symptoms, wasting, appearance symptoms, pain persistent and continual." *Id.* at ¶ 12.  Harmon states that his impairment affects his life activity "moderately, if I am able to maintain a healthy physical regimen, and am not subjected to a lot of unnecessary stress." *Id.* at ¶ 16.  In his Statement of Genuine Issues of Fact, Harmon says: "Unlike most other disability cases, it is not primarily any physical or mental difficulties of the Plaintiff which underlie this case, but the stigma of his disease and how reaction to that was manifested by various of Defendant's employees."  Pl's. Statement of Facts at ¶ 18.

      Defendants argue that because Harmon testifies his major life activities are only "moderately" affected, he does not have an disability under the ADA.  Further, defendants argue Harmon has no evidence that he was regarded as having an impairment as defined by the ADA. Maureen Coffey, who supervised Harmon until August 24, 2004, said Harmon told her on June 22, 2004, that he had a medical condition.  A few days later, Coffey asked Harmon to let her know if his medical condition was hindering his performance in any way, but Harmon never responded or indicated that his medical condition was causing any of his problems with work performance.  Def's. Br. in Supp. of Mot., Ex. 5 (Coffey Aff.) at 3, 6-8.  Patty Coke, who became Harmon's supervisor on August 24, 2004, says she learned on October 28, 2004, that Harmon had a medical condition but it was never identified as a disability. *See id.,* Ex. 4 (Coke Aff.) at 6-7. Further, Dr. Lang, the person who made the decision to terminate Harmon, said he was unaware

that Harmon had a disability. *Id.*, Ex. 2 (Lang Aff.) at 7, 13. The Court finds plaintiff fails to establish that he is an individual with a disability.[6]

Even if Harmon were able to establish that he was a qualified individual with a disability, the Court finds Harmon has set forth no facts to support his claim that the VA failed to train him because of his disability or that he was terminated because he was unable to perform his job. To prove disability discrimination, an employee must show he suffered an adverse employment action because of the disability. *Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1034 (8th Cir.2005). Adverse employment actions include "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Harmon alleges that when he transferred to the VA hospital in Little Rock, "it was agreed by all that he would have to undergo on-the-job training." Compl. at ¶ 8. He claims that soon after Coffey determined that Harmon had HIV-AIDS, she stopped interacting with him and he was left on his own. *Id.* at ¶ 9. Harmon claims that Coffey failed to properly train him but pressured him to be more productive. ¶ 10. In August, his supervisors placed Harmon in programs intended to help employees with work-related issues, and in September 2004, Harmon attended a cancer registry seminar. Harmon says more training would have enabled him to perform even better. Defs.' Br. in Supp., Ex. 1 at 8, ¶ 38.

There is no evidence to support Harmon's claim that he was denied on-the-job assistance. According to the memorandum placing him on a 30-day assistance plan, Coffey advised him in February 2004 that he needed to complete an average of three abstracts per day by March 30,

---

[6]The Court notes that plaintiff offers no argument in support of his motion for continuance that further discovery would reveal specific facts in support of his claim for disability discrimination.

2004, to be "accomplished as a routine task by 6/17/04." *Id.*, Ex. 6. "The purpose of this counseling and 30-day period is to help you improve your performance. Assistance will be made available to you . . . however, you must take the initiative to seek improvements." *Id.* Patty Coke, who initiated the second performance improvement program for Harmon, said she moved Harmon's office from the seventh floor to the second floor, where her office was located, in order to make it easier to help him if he had a problem. Defs.' Br. in Supp. Mot. Summ. J., Ex. 4 (Coke Aff.) at 13-14. The VA also sent him to a cancer registry seminar to receive training.

In his motion for continuance, Harmon states additional discovery will force Coke to admit she was trying to get him to quit, was setting unreasonable guidelines by which to measure his performance, and performed little or no supervision or training while he was in the second performance improvement program. Through her sworn affidavit, Coke states she placed Harmon on a second improvement program and moved his office closer to hers. She also sent him to a seminar. Harmon's assertion that additional discovery will "force" Coke to testify differently is insufficient to delay a ruling on defendants' motion.

Because there is no credible evidence from which a jury could determine that Harmon suffered discrimination on the basis of disability, the Court finds defendants' motion for summary judgment should be granted.

**3.      Retaliation Claim**

Harmon alleges he was terminated in retaliation for "his attempts to protect himself from discrimination and to uphold his rights under the ADA." He says "he made the VA aware of the acts of its supervisors on numerous occasions and the VA should have prevented its supervisors from pursuing their conduct. Instead, the VA rubber-stamped the discrimination and reprisals."

Compl. at ¶ 17.  Harmon alleges he is protected by the Rehabilitation Act and that he "suffered reprisal for attempting to insure his rights, thus bringing him within the ambit of the Civil [R]ights Act." *Id.* at ¶ 19.

Retaliation is actionable under the Rehabilitation Act.  *Mershon v. St. Louis Univ.,* 442 F.3d 1069, 1074 n.3 (8th Cir. 2006).  Such a claim has the following elements: protected activity, adverse action taken by the employer against the employee, and a causal link between the two.  Proof of an adverse employment action requires a "tangible change in duties or working conditions that constitute [ ] a material employment disadvantage." *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 972 (8th Cir.1999) (citations omitted) (analyzing ADA case, which uses the same standards).  If a prima facie case is made, the burden of production shifts to the defendant to proffer a legitimate non-discriminatory reason for the adverse action.  The burden then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination.  *Mershon, supra.*

Harmon alleges that in June 2004, he "filed an EEOC complaint with the VA's Office of Resolution Management (ORM) related to his interaction with Coffey, and a subsequent EEOC complaint related to the performance programs described below."  Compl. at ¶ 10.  Harmon contends his termination was in retaliation for filing the EEOC complaints.  *See* Pl's. Br. in Supp. of Resp. to Mot. Summ. J., at 13.  He bases this on Dr. Lang's statement that Harmon "showed no remorse and blamed everyone else for his problems. He alleged that everybody else was out to get him and because of that I didn't see any possibility that he could be rehabilitated."  Harmon argues that the only way for Dr. Lang to have developed this opinion is from the EEOC complaints.

There is nothing in the record or any specific evidence identified by Harmon in his motion for continuance to dispute defendants' assertion that they terminated Harmon because of his behavior at the seminar.  Harmon reportedly confronted Urekman in an aggressive manner and also grabbed another female UAMS employee by the arm as she and Urekman were trying to get into the women's restroom.  Harmon offers no credible evidence that the real reason for his termination in December 2004 was retaliation for filing EEOC complaints in the summer of 2004.

## Conclusion

IT IS THEREFORE ORDERED that the motion to dismiss or for summary judgment [docket entry 9] is granted.  A separate judgment will be entered dismissing plaintiff's complaint.

DATED this 20th day of February 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE